# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| EARL M. WHEBY, JR., Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) Case No. _____ |
| v. | ) ) CLASS ACTION ) |
| NIGHTSTAR THERAPEUTICS PLC, PAULA COBB, DAVID FELLOWS, CHRIS HOLLOWOOD, DAVID LUBNER, JAMES MCARTHUR, DAVID MOTT, SCOTT WHITCUP, and BIOGEN INC., | ) JURY TRIAL DEMANDED ) ) ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on March 4, 2019 (the "Proposed Transaction"), pursuant to which Nightstar Therapeutics plc ("Nightstar" or the "Company") will be acquired by affiliates of Biogen Inc. ("Biogen").

2. On March 4, 2019, Nightstar's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an implementation agreement (the "Implementation Agreement") with Biogen Switzerland Holdings GmbH and Tungsten Bidco Limited. Pursuant to the terms of the Implementation Agreement, Nightstar's stockholders will receive $22.50 in cash for each share of Nightstar common stock they hold.

3. On April 9, 2019, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for May 8, 2019.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Nightstar common stock.

9. Defendant Biogen is a Delaware corporation.

10. Defendant Nightstar is an England and Wales public limited company and maintains its principal executive offices at 10 Milford Place, 2nd Floor, London W1T 5BJ United Kingdom. Nightstar's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "NITE." Nightstar is a party to the Implementation Agreement.

11. Defendant Paula Cobb is a director of the Company.

12. Defendant David Fellows is Chief Executive Officer and a director of the Company.

13. Defendant Chris Hollowood is Chairman of the Board of the Company.

14. Defendant David Lubner is a director of the Company.

15. Defendant James McArthur is a director of the Company.

16. Defendant David Mott is a director of the Company.

17. Defendant Scott Whitcup a director of the Company.

18. The defendants identified in paragraphs 11 through 17 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Nightstar (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20. This action is properly maintainable as a class action.

21. The Class is so numerous that joinder of all members is impracticable. As of February 28, 2019, there were approximately 33,483,821 shares of Nightstar common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22.     Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

23.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

26.     Nightstar is a leading clinical-stage gene therapy company focused on developing and commercializing novel one-time treatments for patients suffering from rare inherited retinal diseases that would otherwise progress to blindness.

27.     Nightstar's lead product candidate, NSR-REP1, is currently in Phase 3 development for the treatment of patients with choroideremia, a rare, degenerative, genetic retinal

4

disorder that has no treatments currently available and affects approximately one in every 50,000 people.

28. Positive results from a Phase 1/2 trial of NSR-REP1 were published in Nature Medicine in 2018, in The New England Journal of Medicine in 2016, and in The Lancet in 2014.

29. Nightstar's second product candidate, NSR-RPGR, is currently being evaluated in a clinical trial known as the XIRIUS trial for the treatment of patients with X-linked retinitis pigmentosa, an inherited X-linked recessive retinal disease that affects approximately one in every 40,000 people.

30. In September 2018, Nightstar announced positive preliminary safety and efficacy data from the XIRIUS trial for the first five cohorts (combined n=15) of the dose escalation study at the EURETINA medical meeting.

31. On March 4, 2019, the Company's Board caused the Company to enter into the Implementation Agreement.

32. Pursuant to the terms of the Implementation Agreement, Nightstar's stockholders will receive $22.50 in cash for each share of Nightstar common stock they hold.

33. According to the press release announcing the Proposed Transaction:

Nightstar Therapeutics plc ("Nightstar") (NASDAQ: NITE), a clinical-stage gene therapy company developing treatments for rare inherited retinal diseases and Biogen Inc. ("Biogen") are pleased to announce that they have reached agreement on the terms of a recommended acquisition whereby the entire issued and to be issued share capital of Nightstar will be acquired by Tungsten Bidco Limited (a newly-incorporated company and wholly-owned subsidiary of Biogen Switzerland Holdings GmhH ("Bidder")). It is intended that the Acquisition will be implemented by means of a U.K. Court-sanctioned scheme of arrangement under Part 26 of the U.K. Companies Act 2006.

Under the terms of the Acquisition, Nightstar Shareholders will be entitled to receive USD 25.50 in cash for each Nightstar Share. The terms of the Acquisition values Nightstar's entire issued and to be issued share capital at approximately USD 877 million and the terms of the Acquisition represent a premium of approximately

70 per cent. to the 30 trading day volume-weighted average price per Nightstar ADR of USD 15.02 for the period from 17 January 2019 to 1 March 2019 (being the last practicable date prior to the date of this Announcement). . . .

Acquisition details

It is intended that the Acquisition will be implemented by means of a U.K. Court-sanctioned scheme of arrangement under Part 26 of the Companies Act (or, if Biogen elects, subject to the consent of Nightstar and subject to the terms of the Implementation Agreement, an Offer). The Acquisition is conditional on, among other things: (i) the approval of Nightstar Shareholders at the Court Meeting and the passing of the resolutions by Nightstar Shareholders at the General Meeting; and (ii) the sanction of the Scheme by the U.K. Court; and (iii) approval from competition authorities in the U.S and Germany. The Acquisition does not require the approval of Biogen Shareholders.

The Acquisition is expected to become Effective by mid-year 2019, subject to the satisfaction (or, where applicable, waiver) of the Conditions set out in Appendix I to this Announcement.

Further details of the Acquisition will be contained in the Scheme Document which is intended to be posted to Nightstar Shareholders along with notices of the Court Meeting and General Meeting and the Forms of Proxy within 15 Business Days following the date Nightstar has cleared comments received from the U.S. Securities and Exchange Committee ("SEC"), if any, on such document, unless Nightstar and Bidder otherwise agree to a later date.

Centerview Partners is acting as lead financial advisor to Nightstar. Jefferies LLC is also acting as financial advisor to Nightstar. Skadden, Arps, Slate, Meagher & Flom LLP is acting as legal counsel to Nightstar.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

34. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for May 8, 2019.

35. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

36. First, the Proxy Statement omits material information regarding the Company's financial projections and the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Centerview Partners ("Centerview").

6

37. With respect to the Company's financial projections, the Proxy Statement fails to disclose, for each set of projections: (i) all line items used to calculate Total Gross Profit; (ii) all line items used to calculate Operating Income; (iii) all line items used to calculate Unlevered Free Cash Flow; (iv) a reconciliation of all non-GAAP to GAAP metrics; (v) net operating losses; (vi) which set of projections represents the best set of projections for the Company; and (vii) the assumptions, adjustments, and probabilities of success for each set of projections.

38. With respect to Centerview's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the individual inputs and assumptions underlying the discount rates ranging from 12.5% to 15.0%; (iii) the forecasted tax savings from usage of net operating losses and future losses; and (iv) the number of fully-diluted outstanding Nightstar shares.

39. With respect to Centerview's Precedent Premiums Paid Analysis, the Proxy Statement fails to disclose: (i) the transactions observed by Centerview in the analysis; and (ii) the premiums paid in the transactions.

40. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

41. Second, the Proxy Statement fails to disclose the terms of the engagement of the Company's additional financial advisor, Jefferies LLC ("Jefferies"). Among other things, the

7

Proxy Statement fails to disclose the amount of compensation Jefferies will receive in connection with its engagement, as well as the amount of Jefferies' compensation that is contingent upon consummation of the Proposed Transaction. Further, the Proxy Statement fails to disclose whether Jefferies has performed past services for any parties to the Merger Agreement or their affiliates, as well as the timing and nature of such services and the amount of compensation received by Jefferies for such services.

42. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

43. Third, the Proxy Statement fails to disclose the timing and nature of all communications regarding the future employment and directorship of the Company's officers and directors, including who participated in all such communications.

44. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

45. Fourth, the Proxy Statement omits material information regarding the background of the Proposed Transaction.

46. The Proxy Statement fails to disclose the timing and nature of all discussions regarding "the requirement that a superior proposal (for purposes of the Implementation Agreement) include a price per Nightstar Share that is more than 7.5 per cent. above the Consideration."

47. The Proxy Statement also fails to disclose the terms of all proposals from "Company A."

48. The Company's stockholders are entitled to an accurate description of the process leading up to the Proposed Transaction.

49. The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background to the Recommendation; (ii) Reasons for the Recommendation; (iii) Opinion of Nightstar's Financial Advisor; and (iv) Certain Forecasts.

50. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Nightstar

51. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

52. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Nightstar is liable as the issuer of these statements.

53. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

54. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

55. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

56. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

57. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

58. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Biogen

59. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

60. The Individual Defendants and Biogen acted as controlling persons of Nightstar within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Nightstar and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

61. Each of the Individual Defendants and Biogen was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly

10

after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

62. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

63. By virtue of the foregoing, the Individual Defendants and Biogen violated Section 20(a) of the 1934 Act.

64. As set forth above, the Individual Defendants and Biogen had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.	Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.	Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.	Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.	Granting such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: April 26, 2019

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com